NOAH JOHNSTON

v.

CHARLES A. BERRY.

</div>

PRINCIPAL AND AGENT—RATIFICATION—REPUDIATION.—If a principal intends to repudiate the acts of his agent, it is his duty to do so at once on receiving knowledge of them.  If, on the contrary, he neglects to do so, and by his silence and delay the party contracting with the agent is led to believe that he has consented thereto, and thereby parts with a valuable consideration, the principal will be held to an implied ratification of the agreement.

Johnston v. Berry.

APPEAL from the Circuit Court of Jefferson county; the Hon. MONROE C. CRAWFORD, Judge, presiding.

Mr. THOMAS S. CASEY, for appellant; that a principal must disaffirm the unauthorized act of his agent as soon as the fact comes to his knowledge, cited Chitty on Contracts, 202; 1 Parsons on Contracts, 82; Paley on Agency, 171; 2 Kent's Com. 615; Livermore on Principal and Agent, 396; Ward v. Williams, 26 Ill. 447; Williams v. Merritt, 23 Ill. 623; Searing v. Butler, 69 Ill. 575.

If payment of an individual debt is made out of the firm property, with the consent of the other partner, or such payment is subsequently ratified by the other partner, it will bind the firm: Corbin et al. v. McChesney, 26 Ill. 231; T. W. & W. R. R. Co. v. Rodrignes, 47 Ill. 188; Marine Co. v. Carver et al. 42 Ill. 66; Casey et al. v. Carver et al. 42 Ill. 225.

Mr. CHARLES H. PATTON, for appellee; contended that appellant received the goods knowing that the party giving them was a clerk or partner, and had no authority to pay his debt in that manner, and cited Trustees, etc. v. McCormick, 41 Ill. 323.

The burden is upon appellant to prove that appellee ratified the act: 1 Greenleaf's Ev. § 74.

ALLEN, J.   This suit was commenced before a justice of the peace, and taken by appellee to the Circuit Court.   Trial at February term, A. D. 1878, and judgment for appellee for $115 and costs.   The cause is brought to this court by appeal.

The facts are, substantially, as follows:

Appellee and one J. F. Baltzel were in the grocery business together in Mt. Vernon.   They were brothers-in-law.   Appellee furnished the capital, and Baltzel, for his services was to receive one-half the profits.   Baltzel was indebted to appellant, and had given appellant two notes.   He agreed with appellant to pay the notes, or part of them, out of the stock in the grocery, if appellant would credit the notes with what he got. With this agreement, appellant commenced getting groceries

in October, 1875. Sometimes he bought of Baltzell and sometimes of appellee, until February, 1877, when his bill amounted in the aggregate to $115. That the house was selling for cash.

Some time in February, 1877, appellee presented his account to appellant and demanded payment.

Appellant notified appellee of his arrangement with Baltzell, and refused to pay appellee the account.

What occurred subsequently will appear in the opinion.

The only question raised by this record is, whether the evidence in this case sustains the judgment of the Circuit Court.

The appellee, when told by appellant of the arrangement between appellant and Baltzell, proceeded with appellant to the store of appellee to see Baltzell. Baltzell informed appellee that what the "Major" (meaning appellant) "said was correct." Appellee replied, "I did not know it," or "You did not tell me." Appellant remained some time in the store with appellee, but nothing further was said by appellee about the matter. When appellant left the store, and from that time until August or September following, appellee—although meeting appellant almost daily—said nothing further to appellant about the bill. In about one month after the interview between the parties at the store, in the presence of Baltzell, appellant and Baltzell had a settlement, in which appellant settled the account by surrendering up to Baltzell one of his notes, and placing upon another a credit for the balance after paying off the one note; that Baltzell then entered at the foot of the account on the book, "charge to Baltzell," and from that time for five months appellant heard nothing more from appellee about the matter, when appellee again demanded payment of the account. Was the conduct of appellee at the time he was made acquainted with the facts, and afterward, such as to imply assent to the agreement made by his agent or clerk?

If appellee intended to repudiate the contract of Baltzell, it was his duty to do so at once on learning what the contract was. Chitty on Contracts, p. 202; Parsons on Contracts, 1st vol. p. 82. He had no right to deceive appellant by his silence, and induce him to surrender his notes to Baltzell under the

impression that he, appellee, was consenting to the arrangement; and if by his silence he led appellant to believe he was assenting to it, he, by implication, ratified the agreement. Ward v. Williams, 26 Ill. 447; Williams v. Merritt, 23 Ill. 623.

Appellee says he told appellant at the time he first presented his bill that he could not pay the individual debts of Baltzell. Appellant contradicts him in this, and says that it was at the time he demanded his bill, in August or September, that he made that remark; but whether this remark was made at the one time or the other, when appellee, in his own store, was confronted by his clerk or agent, and informed that appellant had such an arrangement with him, on which he had received the goods, it was his duty then and there to have repudiated the contract of his clerk, and by his silence at that time and for six months afterward, he impliedly ratified it. With these views, we believe the judgment of the Circuit Court is not supported by the evidence.

Judgment of the Circuit Court reversed and cause remanded.

Reversed and remanded.